1  **BOHM, MATSEN, KEGEL & AGUILERA, LLP**
2  Lee A. Wood – Of Counsel (SBN 58676)
   Matthew J. Salcedo (SBN 237866)
3  695 Town Center Drive, Suite 700
   Costa Mesa, California 92626
4  Telephone: (714) 384-6500
5  Facsimile:  (714) 384-6501

6
   Attorneys for Defendants CITY OF MAYWOOD, a municipal corporation and
7  public entity, BRUCE LEFLAR, JASON PERKINS, JERRY SALGADO, JOHN
8  BOSTON, RYAN WEST, BRENT TALMO, MEDA and GARCIA

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12  JASON WADE SENA, SHARON            ) Case No. CV07-1724 AHM (JCx)
    JEANETTE SENA,                     ) Assigned For All Purposes To:
13                                     ) The Honorable A. Howard Matz,
14               Plaintiffs,           ) Courtroom 14
                                       )
15         v.                          ) **DEFENDANTS' NOTICE OF**
16                                     ) **MOTION AND MOTION FOR**
    CITY OF MAYWOOD, a public entity,  ) **SUMMARY JUDGMENT OR, IN**
17  BRUCE LEFLAR, J. PERKINS, JERRY    ) **THE ALTERNATIVE, PARTIAL**
    SALGADO, JOHN BOSTON, RYAN         ) **SUMMARY JUDGMENT;**
18  WEST, BRENT TALMO, MEDA and        ) **MEMORANDUM OF POINT AND**
19  GARCIA and DOES 1 through 20,      ) **AUTHORITIES IN SUPPORT**
    inclusive, each of whom is sued    ) **THEREOF; DECLARATION OF**
20  individually and in their official capacity ) **MATTHEW J. SALCEDO**
21  as police officers for the City of )
    Maywood,                           ) **DATE:      April 21, 2008**
22                                     ) **TIME:      10:00 a.m.**
23               Defendants.           ) **PLACE:  Courtroom 14**
24  _____   ) **JUDGE:     Hon. A. Howard Matz**

25  ///

26  ///

27  ///

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

# *Table of Contents*

I.    INTRODUCTION ........................................................................................3

II.   SUMMARY OF FACTS ...........................................................................3

III.  THE MOVING PARTY IS ENTITLED TO SUMMARY JUDGMENT AS A
      MATTER OF LAW WHERE THE EVIDENCE OR ARGUMENT SHOW THE
      PARTY HAS A COMPLETE DEFENSE OR THAT THE PLAINTIFFS LACK
      ESSENTIAL EVIDENCE TO MEET THEIR BURDEN OF PROOF. ...................4

IV.   THE DEFENDANT OFFICERS HAVE A COMPLETE DEFENSE TO THE
      PLAINTIFFS' CLAIMS BECAUSE THEY ARE ENTITLED TO QUALIFIED
      IMMUNITY. ............................................................................................6

      A.   DEFENDANT OFFICERS PERKINS, MEDA, GARCIA, BOSTON, AND
           WEST HAVE QUALIFIED IMMUNITY RELATIVE TO THE INCIDENT OF
           MARCH 29, 2006 ...........................................................................8

           1.   Defendant Officer PERKINS Had Probable Cause To Arrest Plaintiff
                JASON SENA On March 29, 2006. ...........................................8

           2.   Defendant Officers Did Not Use Excessive Force Upon JASON SENA On
                March 29, 2006. .................................................................9

           3.   Defendant Officers MEDA, GARCIA, BOSTON, And WEST Did Not
                Participate In The Arrest Or Prosecution Of JASON SENA On March
                29, 2006 And, Therefore, Cannot Be Held Liable For False Arrest Or
                Malicious Prosecution Thereon. .............................................11

i

4.      The Impoundment And Towing Of JASON SENA's Vehicle On March
        29, 2006 Was Lawful..............................................................................12

B.   DEFENDANT OFFICERS TALMO AND SALGADO HAVE QUALIFIED
     IMMUNITY RELATIVE TO THE INCIDENT OF APRIL 5, 2006........................13

     1.      Defendant Officer TALMO Had Probable Cause To Arrest JASON
             SENA On April 5, 2006................................................................13

     2.      Defendant Officers TALMO And SALGADO Did Not Use Excessive
             Force Upon JASON SENA On April 5, 2006...................................14

     3.      SHARON SENA's Claims Against Defendant TALMO Relative To The
             Incident Of April 5, 2006 Are Without Merit................................15

     4.      Defendant Officer SALGADO Had Official Discretion To Release
             JASON SENA's Impounded Vehicle On April 5, 2006......................16

C.   DEFENDANT OFFICER TALMO HAS QUALIFIED IMMUNITY
     RELATIVE TO THE INCIDENT OF APRIL 7, 2006......................................17

     1.      Defendant Officer TALMO Had Probable Cause To Detain JASON
             SENA On April 7, 2006................................................................18

     2.      Defendant Officer TALMO's Arrest Of JASON SENA On April 7, 2006
             Was The Result Of A Mistake Of Fact And Law..............................18

TABLE OF CONTENTS/AUTHORITIES

V.   PLAINTIFFS' *MONELL* CLAIM FOR RELIEF AGAINST THE CITY SHOULD BE
     DISMISSED. .................................................................................................. 21

     A.   PLAINTIFFS CANNOT PROVE AN UNDERLYING CONSTITUTIONAL
          VIOLATION. ....................................................................................... 23

     B.   PLAINTIFFS HAVE NOT APPROPRIATELY IDENTIFIED THE CUSTOMS
          OR POLICIES THAT CAUSED THEIR CONSTITUTIONAL
          DEPRIVATION. ................................................................................... 24

     C.   PLAINTIFFS HAVE NOT PRESENTED EVIDENCE REGARDING ANY
          UNCONSTITUTIONAL ACTS BY FINAL POLICYMAKERS. ................ 24

     D.   PLAINTIFFS HAVE NOT ESTABLISHED A CAUSAL LINK BETWEEN
          ANY MUNICIPAL POLICY, CUSTOM OR SUPERVISORY ACT AND
          THEIR ALLEGED INJURY. ................................................................ 25

VI.  PLAINTIFF JASON SENA'S DAMAGES, IF ANY, MUST BE LIMITED BECAUSE
     HE IS NOT SUFFERING FROM ANY INJURIES AS A RESULT OF THE
     ALLEGATIONS IN THE INSTANT COMPLAINT. ......................................... 25

VII. PLAINTIFF SHARON SENA'S DAMAGES, IF ANY, MUST BE LIMITED
     BECAUSE SHE HAS FAILED TO MITIGATE ANY DAMAGE WHICH SHE
     ALLEGEDLY SUFFERED AS A RESULT OF THE ALLEGATIONS IN THE
     INSTANT COMPLAINT. .............................................................................. 26

VIII. CONCLUSION ............................................................................................. 27

TABLE OF CONTENTS/AUTHORITIES

# ***Table of Authorities***

## Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ........................................................4

*Aguillard v. McGowan*, 207 F.3d 226 (5th Cir. 2000) .........................................................23

*Atwater v. City of Lago Vista*, 121 S.Ct. 1536 (2001).........................................................6

*Benson v. Hightower* (9th Cir. 1980) 633 F.2d 869 .........................................................18

*Blair v. City of Pomona*, 223 F.3d 1074 (9th Cir. 2000).....................................................22

*Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d
  626 (1997) ...........................................................................................................21, 23, 24

*Butz v.Economou* (1978) 438 U.S. 478 .........................................................................19

*Carter v. District of Columbia*, 795 F. 2d 116, 123-124 (D.C. Cir. 1986).............................22

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 ...............5

*City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197 (1989) ............................21, 22

*City of Los Angeles v. Heller*, 475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) ..............23

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 126, 108 S. Ct. 915, 926 (1988) ................21, 22

*Colburn v. Upper Darby Township*, 946 F.2d 1017, 1028 (3d Cir. 1991).............................25

*DeBoer v. Pennington*, 206 F.3d 857, 864 (9th Cir. 2000) ................................................7

*Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 217-219 (5th Cir. 1998) ....................8

*Eaton v. Meneley*, 379 F.3d 949-954 (10th Cir. 2004)........................................................7

*Fortyune v. Amer. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004) ......................4

*Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) .............................................21

*Hamilton v. Rodgers,* 791 F.2d 439, 443-444 (5th Cir. 1986) ...........................................22

*Harlow v. Fitzgerald* (1982) 457 U.S. 800, 818, 73 L.Ed.2d 396, 102 S.Ct. 2727 ....................7

*Hernandez v. Texas Dept. of Protective Services*, 380 F.3d 872, 882-884 (5th Cir. 2004) ..........8

*Johnson v. Hardin County*, 908 F.2d 1280, 1285 (6th Cir. 1990)......................................25

*Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 (9th Cir. 1981............................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) .......................6

*McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003).......................................8

**TABLE OF CONTENTS/AUTHORITIES**

*McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000) ........................................... 21

*Midwest Growers Co-Op Corp. v. Kirkemo* (9th Cir. 1976) 533 F.2d 455 ......................................... 19

*Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d 858 .......................................... 16

*Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ............ 21

*Nissan Fire & Marine Insur. Co., Ltd. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) .......... 5

*Ogborn v. City of Lancaster*, (2002) 101 Cal.App.4th 448, 459 .......................................... 7

*Quintanila  v. City of Downey*, 84 F.3d 353, 354-356 (9th Cir. 1996) ................................. 23

*Saucier v. Katz*, 533 U.S. 194, 200 (2001) ........................................................ 7

*Schwenk v. Hartford*, 204 F.3d 1187, 1198 (9th Cir. 2000) ........................................... 6

*Shelton v. U.S. Customs Service* (9th Cir. 1977) 565 F.2d 1140 ...................................... 18

*Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002) ............................................... 8

*Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003.) ...................... 5

*Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1997) .............................. 21

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ............................................... 21

*Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999) ............................................ 24

**Statutes**

42 U.S.C. § 1983 ............................................................................. 3, 16

Fed R. Civ. Proc. 56(a), (b) ..................................................................... 4

Fed R. Civ. Proc. 56(c) ......................................................................... 6

Fed. R. Civ. Proc. 56(d) ........................................................................ 4

Penal Code § 422 .............................................................................. 13

Penal Code § 69 ............................................................................... 13

*Penal Code* § 836(a)(1) ......................................................................... 8

Rule 56(c) .................................................................................... 5

**TABLE OF CONTENTS/AUTHORITIES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on April 21, 2008, at 10:00 a.m. in Courtroom 14 of the above-entitled court, located at 312 N. Spring Street in Los Angeles, California,  Defendants CITY OF MAYWOOD, a municipal corporation and public entity, BRUCE LEFLAR, JASON PERKINS, JERRY SALGADO, JOHN BOSTON, RYAN WEST, BRENT TALMO, MEDA, and GARCIA (hereinafter "Defendants") will move this court for summary judgment as to Plaintiffs' entire complaint as there are no genuine issues of material fact with regard to the claims that Plaintiffs are making therein.

In the alternative, Defendants will move for partial summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure against Plaintiffs on the ground that there are no genuine issues of material fact with regard to the issues set forth in the attached Memorandum of Points and Authorities.

The Motion will be based upon this notice, the attached Memorandum of Points and Authorities, Defendants' Separate Statement of Uncontroverted Facts and Supporting Evidence, the complete court file in this action, the declaration of Matthew J. Salcedo and all exhibits attached thereto, and upon such other oral and documentary evidence as the court may consider on this Motion.

This Motion is made following a meet and confer session between counsel, which took place on March 24, 2008.

Respectfully Submitted,

Dated: March 31, 2008     BOHM, MATSEN, KEGEL & AGUILERA, LLP

By: _____

Matthew J. Salcedo,
Attorneys for Defendants CITY OF
MAYWOOD, a municipal corporation and
public entity, BRUCE LEFLAR, JERRY
SALGADO, JOHN BOSTON, RYAN WEST,
BRENT TALMO, MEDA and GARCIA

2

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs filed suit against Defendants on March 9, 2007 alleging claims based on 42 U.S.C. § 1983, involving, inter alia, use of excessive force, deprivation of rights under color of law, false arrest without probable cause, and malicious prosecution.  Plaintiffs have also filed a *Monell* claim against the City of Maywood and Maywood-Cudahy Police Department Chief Bruce Leflar.  The Defendant Officers named in the lawsuit are Officers JASON PERKINS, JERRY SALGADO, JOHN BOSTON, RYAN WEST, BRENT TALMO, MEDA and ADAM GARCIA.

### II.   SUMMARY OF FACTS

Plaintiffs' Complaint alleges myriad constitutional violations stemming from three main incidents.  The first incident occurred on March 29, 2006, where Plaintiff JASON SENA was arrested for traffic violations and driving without a valid license. On that date, Plaintiffs claim that JASON SENA was beaten by the Defendant Officers JASON PERKINS, JOHN BOSTON, RYAN WEST, MEDA, and GARCIA. They further claim that the Defendant Officers allowed a narcotics police dog to attack JASON SENA and place him in fear of serious physical injury.  Despite Plaintiffs' claims, Officer PERKINS, the arresting officer, had probable cause to arrest JASON SENA, and probable cause to search JASON SENA's vehicle.  None of the Defendant Officers that responded to Officer PERKINS' Code 3 back-up assistance call physically assaulted or threatened JASON SENA in any way.

The second incident encompasses events that took place on April 5, 2007, at the Maywood-Cudahy Police Department's Records Office.  Plaintiffs claim that Defendant Officers TALMO and SALGADO deprived JASON SENA of the right to have his vehicle released, which was impounded after his March 29, 2006 arrest. Plaintiffs further allege that Defendant Officers TALMO and SALGADO brutalized JASON SENA by shooting him with Taser darts and assaulting him at the Records

3

1   Office, and that Officer TALMO physically threw SHARON SENA out of the

2   Records Office and onto the sidewalk.  Plaintiffs, however, ignore the fact that

3   JASON SENA was causing public disturbances on each occasion he entered the

4   Records Office lobby that day, and that he threatened to come back and shoot and kill

5   Officers TALMO and SALGADO.  Based on JASON SENA's conduct, Officer

6   TALMO deployed two Taser darts in his chest and placed him under arrest for

7   terrorist threat against an executive officer and resisting arrest, both felonies.

8        Last, Plaintiff JASON SENA claims that Officer TALMO arrested him

9   without probable cause on April 7, 2006, right after he had been arraigned and

10   released on his own recognizance.  Officer TALMO, however, arrested JASON

11   SENA pursuant to orders given by his superiors at the Maywood-Cudahy Police

12   Department, and did so with a good faith belief that he was acting in compliance with

13   law and the rights of JASON SENA.

14   **III.    THE MOVING PARTY IS ENTITLED TO SUMMARY JUDGMENT AS**

15         **A MATTER OF LAW WHERE THE EVIDENCE OR ARGUMENT**

16         **SHOW THE PARTY HAS A COMPLETE DEFENSE OR THAT THE**

17         **PLAINTIFFS LACK ESSENTIAL EVIDENCE TO MEET THEIR**

18         **BURDEN OF PROOF.**

19        Summary judgment is appropriate when the moving party demonstrates that

20   there exists no genuine issue as to any material fact, and that the moving party is

21   entitled to judgment as a matter of law.  (*Adickes v. S.H. Kress & Co.* (1970) 398 U.S.

22   144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142; *Fortyune v. Amer. Multi-Cinema, Inc.* (9th

23   Cir. 2004) 364 F.3d 1075, 1080.)  The court may grant summary judgment as to any

24   claim or defense.  (Fed. R. Civ. Proc. 56(a), (b).)  Further, the court may grant partial

25   summary judgment on discrete elements of claims.  (Fed. R. Civ. Proc. 56(d); *Lies v.*

26   *Farrell Lines, Inc.* (9th Cir. 1981) 641 F.2d 765, 769.)  Defendants can move for

27   summary judgment either by proving that they have a complete defense or by

1   showing that Plaintiffs cannot meet their burden of proof.  (*Celotex Corp. v. Catrett*

2   (1986) 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265.)

3          Defendants moving for summary judgment may meet their burden by

4   presenting evidence establishing all the elements of an affirmative defense entitling

5   the party to judgment in its favor.  (*Southern Calif. Gas Co. v. City of Santa Ana* (9th

6   Cir. 2003) 336 F.3d 885, 888.)  Where the evidence establishes every element of an

7   affirmative defense, Defendants do not need to submit evidence to negate or disprove

8   Plaintiffs' claims.  (*Celotex Corp, supra,* 477 U.S. at 323.)

9          Defendants moving for summary judgment may also move for summary

10  judgment on the ground that the Plaintiffs cannot establish their claim.  (*Nissan Fire*

11  *& Marine Insur. Co., Ltd. v. Fritz Cos. Inc.* (9th Cir. 2000) 210 F.3d 1099, 1102.)

12  Defendants can meet their burden of production by disproving an essential element of

13  Plaintiffs' claim.  (*Id.*)  Alternatively, Defendants can meet their burden of production

14  by showing Plaintiffs lack sufficient evidence regarding an essential element of their

15  claim and thus cannot carry their burden of persuasion at trial.  (*Celotex Corp, supra,*

16  477 U.S. at 323.)  "[W]here the nonmoving party will bear the burden of proof at trial

17  on a dispositive issue, a summary judgment motion may properly be made in reliance

18  solely on the pleadings, depositions, answers to interrogatories, and admissions on

19  file."  (*Id.*)  Moreover, summary judgment should be entered, after adequate time for

20  discovery and upon motion, against a party who fails to make a showing sufficient to

21  establish the existence of an element essential to that party's case, and on which that

22  party will bear the burden of proof at trial.  (*Id.* at 322.)  "[A] complete failure of

23  proof concerning an essential element of the nonmoving party's case necessarily

24  renders all other facts immaterial."  (*Id.*)  In such a circumstance, summary judgment

25  should be granted, "so long as whatever is before the district court demonstrates that

26  the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."

27  (*Id.* at 323.)

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1   Plaintiffs may not rely upon the mere allegations or denials of their pleadings;

2   but rather, must tender evidence of specific facts in the form of affidavits and/or

3   admissible discovery material in support of his contention that a dispute exists.  (Fed

4   R. Civ. Proc. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* (1986) 475

5   U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 .)  The "purpose of summary

6   judgment is to pierce the pleadings and to assess the proof in order to see whether

7   there is a genuine need for trial."  (*Id.* at 587.)  To demonstrate a genuine issue, the

8   opposing party "must do more than simply show that there is mere metaphysical

9   doubt as to the material facts…Where the record taken as a whole could not lead a

10  rational trier of fact to find for the nonmoving party, there is no genuine issue for

11  trial."  (*Id.*)

12  The instant motion and supporting evidence demonstrate that Defendants are

13  entitled to summary judgment or, in the alternative, partial summary judgment as the

14  Court deems appropriate.

15  **IV.  THE DEFENDANT OFFICERS HAVE A COMPLETE DEFENSE TO**

16  **THE PLAINTIFFS' CLAIMS BECAUSE THEY ARE ENTITLED TO**

17  **QUALIFIED IMMUNITY.**

18  The doctrine of qualified immunity is a recognition of the fact that "even

19  where personal liability does not ultimately materialize, the mere 'specter of

20  liability' may inhibit public officials in the discharge of their duties."  (*Atwater v.*

21  *City of Lago Vista* (2001) 533 U.S. 924, 121 S.Ct. 2540, 150 L.Ed.2d 709 [holding

22  that the defendant officers were entitled to qualified immunity for the decision to

23  arrest, handcuff and take to jail a driver who failed to wear her seat belt and failed to

24  fasten her children in seat belts].)  The purpose of qualified immunity is therefore to

25  allow officials to take action "with independence and without fear of consequences."

26  (*Schwenk v. Hartford* (9th Cir. 2000) 204 F.3d 1187, 1198.)  Qualified immunity thus

27  acknowledges that when an official acts in a manner that is not *clearly unlawful*, the

1    public interest is better served by the official being able to make independent and

2    expeditious judgments without fear of consequences, even if those judgments

3    occasionally turn out to be erroneous.  (*DeBoer v. Pennington* (9th Cir. 2000) 206

4    F.3d 857, 864.)

5        Qualified immunity is an entitlement not to go to trial, not merely a defense

6    from liability.  (*Saucier v. Katz* (2001) 533 U.S. 194, 200, 121 S.Ct. 2151, 150

7    L.Ed.2d 272.)  It should be decided early in the proceedings. *Ibid*. Analysis of the

8    qualified immunity defense is a two-step process. The initial inquiry is whether, on

9    the facts alleged, a constitutional right has been violated. If no such right has been

10    violated, plaintiff cannot prevail. (*Id*. at 200-201.) If a violation of a constitutional

11    right does or may exist, the court must consider whether that right was "clearly

12    established."

13        Qualified immunity serves to shield government officials "from liability for

14    civil damages insofar as their conduct does not violate clearly established statutory

15    or constitutional rights of which a reasonable person would have known." (*Harlow*

16    *v. Fitzgerald* (1982) 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396.)  Law

17    enforcement officers are entitled to qualified immunity if they act reasonably under

18    the circumstances, even if the actions result in a constitutional violation. (*Ogborn v.*

19    *City of Lancaster* (2002) 101 Cal.App.4th 448, 459, 124 Cal.Rptr.2d 238.)

20    Governmental officials further are entitled to qualified immunity under 42 U.S.C.

21    §1983 when exercising discretionary functions, unless the officials violate clearly

22    established law.  (*Eaton v. Meneley* (10th Cir. 2004) 379 F.3d 949-954.)

23        The Supreme Court has set forth a two-pronged inquiry to resolve all qualified

24    immunity claims. First, "taken in the light most favorable to the party asserting the

25    injury, do the facts alleged show the officers' conduct violated a constitutional

26    right?" (*Saucier, supra*, 533 U.S. at 201.)  Second, if so, was that right clearly

27    established? (*Id*.)  "The relevant, dispositive inquiry in determining whether a right

1 | is clearly established is whether it would be clear to a reasonable officer that his
2 | conduct was unlawful in the situation he confronted." (*Id*. at 202.) This inquiry is
3 | wholly objective and is undertaken in light of the specific factual circumstances of
4 | the case. (*Id*. at 201; see also *Sorrels v. McKee* (9th Cir. 2002) 290 F.3d 965, 970.)
5 |     An officer does not lose his or her qualified immunity because of a mistaken
6 | belief, nor does the officer lose immunity because of a reasonable mistake as to the
7 | legality of the officer's actions. (*McCoy v. City of Monticello* (8th Cir. 2003) 342
8 | F.3d 842, 846.) Similarly, actions and decisions by government officials that are
9 | inept, erroneous, ineffective or negligent are still entitled to qualified immunity
10 | because such conduct does not amount to deliberate indifference, which is the
11 | prerequisite for divesting the officials of qualified immunity. (*Hernandez, ex rel.*
12 | *Hernandez v. Texas Dept. of Protective Services* (5th Cir. 2004) 380 F.3d 872, 882-
13 | 884; *Doe v. Dallas Independent School Dist.* (5th Cir. 1998) 153 F.3d 211, 217-219.)

**A. DEFENDANT OFFICERS PERKINS, MEDA, GARCIA, BOSTON, AND WEST HAVE QUALIFIED IMMUNITY RELATIVE TO THE INCIDENT OF MARCH 29, 2006.**

    **1. Defendant Officer PERKINS Had Probable Cause To Arrest Plaintiff JASON SENA On March 29, 2006.**

19 |     A peace officer may arrest a person if the officer has probable cause to believe
20 | that the person has committed a public offense in the officer's presence. (*Penal Code*
21 | § 836(a)(1).) On March 29, 2006, Officer PERKINS observed JASON SENA driving
22 | his silver Toyota Camry at an excessive rate of speed. (UMF 1, 2.) Based on Officer
23 | PERKINS' experience and training in the field, this was a violation of the posted
24 | speed limit in the area. (UMF 3.) Officer PERKINS also observed that the front
25 | windshield of JASON SENA's car was cracked. (UMF 15.) These observations in
26 | the field gave Officer PERKINS probable cause to pull JASON SENA over for a
27 | routine traffic stop.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1   When Officer PERKINS stopped JASON SENA along the 4100 block of W.

2   Santa Ana Street (UMF 4, 8), JASON SENA did not pull his car all the over to the

3   curb; rather, he stopped in the middle of the lane, a distance away from the curb

4   (UMF 9).  This created a traffic hazard, as the area where JASON SENA was stopped

5   was partly residential. (UMF 6, 10.)  JASON SENA also had both of his hands

6   outside his driver side window. (UMF 12.)

7   Officer PERKINS learned through a DMV records search that JASON SENA

8   was driving his vehicle without a valid license. (UMF 16.)  Indeed, upon asking

9   JASON SENA for his license, JASON SENA did not have a valid Class C license in

10   his possession. (UMF 13.)  Driving without a valid license in California is a

11   misdemeanor offense. (UMF 20.)  Officer PERKINS also observed that JASON

12   SENA did not have his front license plate affixed to the vehicle. (UMF 14.)  These

13   were violations of the Vehicle Code in addition to JASON SENA's initial speeding.

14   Officer PERKINS presented JASON SENA with a Notice to Appear, which

15   identified each of JASON SENA's traffic violations. (UMF 17.)  JASON SENA

16   refused to sign the Notice to Appear presented to him. (UMF 18.)  Officer PERKINS

17   was compelled by law to arrest JASON SENA because JASON SENA refused to sign

18   the Notice to Appear. (UMF 19.)  Officer PERKINS charged JASON SENA with

19   violations of Vehicle Code §§ 26710, 5200(a), and 12500(a) (UMF 25, 26, 27), and

20   arrested JASON SENA (UMF 28).

21   Given the foregoing, Officer PERKINS had probable cause to arrest JASON

22   SENA on March 29, 2006.

23   **2. Defendant Officers Did Not Use Excessive Force Upon JASON**

24   **SENA On March 29, 2006.**

25   Officer PERKINS assisted JASON SENA out of the car on March 29, 2006.

26   (UMF 21.)  Officer PERKINS performed a pat-down search of JASON SENA (UMF

27   22.)  JASON SENA did not feel harmed by this pat-down search. (UMF 23.)  After

1   the pat-down, Officer PERKINS led JASON SENA to the curb to sit down as Officer

2   PERKINS waited for back-up. (UMF 24.)  About 20-30 seconds later, Officers

3   MEDA, GARCIA, BOSTON, and WEST showed up at the scene (UMF 29) and all

4   saw JASON SENA sitting on the curb (UMF 30).

5       When Officer GARCIA arrived, he heard JASON SENA say that he was

6   involved in a fight prior to being pulled over by Officer PERKINS (UMF 36), and

7   struck in the nose area during that fight on March 29, 2006 (UMF 37).  Officer

8   GARCIA also heard JASON SENA say that he was going to sue Defendants for the

9   injuries he sustained in the fight. (UMF 38.)  Indeed, JASON SENA admits that his

10  black eye was not a result of being punched by any Defendant Officer that night.

11  (UMF 88.)

12      At no time while the Defendant Officers were on the scene did any of them

13  strike or kick JASON SENA (UMF 82, 83); throw JASON SENA down to the ground

14  (UMF 86); place JASON SENA in threat of physical abuse (UMF 85); or say

15  anything harassing to JASON SENA (UMF 84).  At no time did any of the Defendant

16  Officers draw their guns, batons, or any other weapon. (UMF 40.)

17      Officer WEST arrived at the scene with a 40 to 50 lb. narcotics search dog.

18  (UMF 58.)  The police dog was leashed and was kept at least 10 feet away from

19  JASON SENA at all times.  (UMF 47, 48, 49.)  At no time did any of the Defendant

20  Officers use the police dog to snarl or bark at JASON SENA (UMF 51,52), or to

21  physically assault, provoke, or threaten JASON SENA (UMF 43, 45, 53, 54).  In fact,

22  JASON SENA admits that the police dog never made any physical contact with

23  JASON SENA (UMF 41, 42) and that no officer touched JASON SENA when the

24  dog was near JASON SENA. (UMF 44.)

25      While JASON SENA was yelling profanities at the Defendant Officers much

26  of the time, none of them responded to JASON SENA (UMF 35, 84), and there was

27  no indication that escalated use of force was required (UMF 61).  Instead, the other

1  Officers were solely there at the scene to provide assistance to Officer PERKINS if

2  necessary.  Indeed, JASON SENA saw some of the Defendant Officers talking

3  together around his vehicle while he was sitting on the curb (UMF 31), and others

4  were standing on the sidewalk near him (UMF 32, 33).

5       Officer WEST used the police dog to search JASON SENA's vehicle at Officer

6  PERKINS' request (UMF 60), and another Defendant Officer helped Officer

7  PERKINS lift JASON SENA from the curb (UMF 69) and placed him in Officer

8  PERKINS' patrol car (UMF 73) because JASON SENA was about 310 lbs. and very

9  cumbersome at the time (UMF 68).

10      Before being placed in the patrol car, no Defendant Officer slammed JASON

11 SENA's body up against the curb. (UMF 87.)  When JASON SENA was being led to

12 Officer PERKINS' patrol car for transport, JASON SENA admits that no Defendant

13 Officer struck him as he walked to the patrol car. (UMF 77, 89.)  JASON SENA had

14 trouble getting into the patrol car given his body weight and mass (UMF 71, 72) but

15 he states that the patrol car door was open (UMF 74) and that Officer PERKINS and

16 the other Defendant Officer helping him did not push JASON SENA up into the

17 metal frame/body of the patrol car (UMF 75).  Rather, Officer PERKINS and the

18 other Defendant Officer were trying to fit JASON SENA into the interior of the patrol

19 car (UMF 75) and JASON SENA hit his head in the process (UMF 76) due to the

20 difficulty he had getting into the patrol car.

21      Based on the foregoing, the Defendant Officers did not use excessive force on

22 JASON SENA on March 29, 2006.

23           **3. Defendant Officers MEDA, GARCIA, BOSTON, And WEST Did**

24              **Not Participate In The Arrest Or Prosecution Of JASON SENA**

25              **On March 29, 2006 And, Therefore, Cannot Be Held Liable For**

26              **False Arrest Or Malicious Prosecution Thereon.**

27 Officer PERKINS was the handling officer on scene on March 29, 2006.  He

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1   alone filled out the booking slip, the Arrest Report, and the Narrative Report

2   regarding the arrest of JASON SENA on March 29, 2006. (UMF 63, 64, 65, 66.)

3   After Officer PERKINS finished his investigation, he alone transported JASON

4   SENA to MPD for booking. (UMF 78, 79.)  Officer WEST arrived only after Officer

5   PERKINS had arrested JASON SENA and did not participate in the arrest.  (UMF

6   39.)  Officer GARCIA was not involved in the arrest of JASON SENA or the scene

7   investigation (UMF 34) and none of the other Defendant Officers even spoke to

8   JASON SENA (UMF 35, 84).  Thus, while Officers WEST, GARCIA, BOSTON,

9   and MEDA arrived at the scene, they did not participate in the arrest of JASON

10   SENA and cannot be held liable to JASON SENA for his arrest or malicious

11   prosecution.

              **4.  The Impoundment And Towing Of JASON SENA's Vehicle On March 29, 2006 Was Lawful.**

14        Pursuant to MPD policy, MPD officers have discretion to order the towing of

15   vehicles stopped in Cudahy that are driven by unlicensed drivers. (UMF 91.)  If a

16   person is arrested by an MPD officer in Cudahy, their car is towed per policy. (UMF

17   92.)  Further, per policy, if an MPD officer orders the impoundment of a vehicle, the

18   vehicle must be stored inside a secured structure, such as an on-call towing company

19   facility (UMF 93), and a CHP 180 form must be executed (UMF 94).

20        As an MPD officer, Officer PERKINS had complete discretion to tow and

21   impound JASON SENA's vehicle after arresting JASON SENA.  Further, as JASON

22   SENA was the sole occupant of his vehicle, there was nobody available to driver his

23   vehicle off the scene.  As Officer PERKINS acted reasonably and pursuant to MPD

24   policy, he cannot be held liable for unlawful impoundment and towing.

25   ///

26   ///

27   ///

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**B. DEFENDANT OFFICERS TALMO AND SALGADO HAVE QUALIFIED IMMUNITY RELATIVE TO THE INCIDENT OF APRIL 5, 2006.**

    **1. Defendant Officer TALMO Had Probable Cause To Arrest JASON SENA On April 5, 2006.**

On April 5, 2006, Officer Talmo arrested JASON SENA and charged him with Criminal Threats under Penal Code § 422 and with Obstructing/Delaying/Threatening an executive officer under Penal Code § 69. Officer TALMO arrested JASON SENA because he was in imminent fear of losing his life. (UMF 155.)

At the time of the arrest, Officer TALMO had personally observed JASON SENA's violent tendencies earlier in the day when he was forced to eject JASON SENA from the Records Office lobby after JASON SENA had yelled at and threatened the staff there. Earlier that day, Officer TALMO was called to assist Officer SALGADO at the Records Office lobby because JASON SENA was out of control and created a public disturbance in the Records Office lobby, after being asked to leave. JASON SENA was yelling profanities at the Records Office personnel and yelling "mother fucking police" at the top of his lungs in the Records Office lobby. (UMF 98, 99, 100, 103.) When Officer Talmo ordered JASON SENA to leave the premises, the first time, JASON SENA stated to Officer Talmo: "Fuck you guys, if I don't leave are you going to shoot me?" (UMF 112.) Once JASON SENA left the Records Office, he went to a fast-food restaurant across the street from the Records Office. While at the fast-food restaurant, JASON SENA was fist-fighting with the bushes, and was "swinging violently at the bushes as if he were in a boxing match, punching the bushes … and he was swinging left an right, left and right, over and over again as if he were pounding somebody." (UMF 120, 121.) At this time, JASON SENA was also "was yelling and screaming at the top of his lungs" and "cursing out of his mind." (UMF 122.)

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1    JASON SENA yell at Officers TALMO and SALGADO: "Fuck you, cops.  I

2   bet you'd like to shoot me with your guns. Fuck you, pussies." (UMF 132.) "Fuck

3   you, cops.  I won't let you shoot me. I'll come back and shoot all you mother

4   fuckers." (UMF 133.)  After JASON SENA told Officer TALMO, "Fuck you cops, I

5   won't let you shoot me, I'll come back and shoot all you mother fuckers," Officer

6   TALMO decided to go into the MPD station and generate a crime report for terrorist

7   threats by JASON SENA against him and Officer Salgado so that detectives could

8   handle the case. (UMF 136.)

9    When Officer TALMO confronted JASON SENA for the second time in the

10  Records Office lobby, he kept replaying JASON SENA's threats to him earlier in the

11  day: "Fuck you, cops.  I won't let you shoot me. I'll come back and shoot all you

12  mother fuckers." (UMF 156.)  Officer TALMO believed that JASON SENA had

13  actually come back to the Records Officer to carry out his threats and kill him. (UMF

14  156.)  Further, Officer TALMO did not know if he had any police back-up when he

15  was facing off with JASON SENA.  (UMF 154.)  As JASON SENA stood looking at

16  him with his hands in his jacket pocket, Officer TALMO believed that JASON SENA

17  was reaching for something under his jacket or shirt. (UMF 174.)  Based on his belief

18  that JASON SENA was going to shoot him, Officer Talmo then deployed two Taser

19  darts into JASON SENA's chest area, (UMF 157) and immediately handcuffed

20  JASON SENA while he was on the Records Office lobby floor. (UMF 159.)

21   As JASON SENA placed Officer TALMO in imminent fear of losing his life,

22  there is no doubt that he had adequate probable cause to use less-than-lethal force to

23  subdue and arrest JASON SENA on April 5, 2006.

24    **2. Defendant Officers TALMO And SALGADO Did Not Use**

25    **Excessive Force Upon JASON SENA On April 5, 2006.**

26   Given the circumstances, Officer TALMO's use of force in the Records Office

27  lobby was not excessive.  After Officer TALMO shot JASON SENA with the Taser

1   darts, he and Officer SALGADO transported JASON SENA from the Records Office

2   lobby floor to the MPD station. (UMF 178.)  Officers TALMO and SALGADO did

3   not strike, kick, or throw JASON SENA into any walls en route to the MPD booking

4   area. (UMF 178.)

### 3. SHARON SENA's Claims Against Defendant TALMO Relative To The Incident Of April 5, 2006 Are Without Merit.

7        SHARON SENA's claim that Officer TALMO "physically threw her out of the

8   Records Office lobby" is simply not credible.

9        The front door of the Records Office lobby was closed when SHARON SENA

10  claims that Officer TALMO threw SHARON SENA out of the Records Office lobby.

11  (UMF 167.) SHARON SENA does not recall hitting the closed glass door when she

12  claims that Officer TALMO threw her out the front door. (UMF 169.) What is

13  noteworthy is that when SHARON SENA claims that she regained consciousness

14  after being ejected from the Records Office lobby, she did not ask any civilians for

15  help as she was allegedly on the sidewalk in front of the Records Office lobby.

16  (UMF 180.) SHARON SENA's reason for not asking for help is shocking: SHARON

17  SENA did not ask any civilians for help after she had regained consciousness simply

18  because "these people were Hispanic." (UMF 181.)

19        Among other uncontroverted material facts in the Separate Statement,

20  SHARON SENA maintained that she ardently sought help for her son JASON SENA,

21  whom she believed had just been shot with a real gun. (UMF 185.) However, rather

22  than tell people that she believed her son JASON SENA had just been shot, she went

23  to the MPD station in order to file a complaint against the agency. (UMF 193-200.)

24  Even more disturbing, SHARON SENA's first telephone call to anyone after the

25  incident was to her daughter, in which she asked "whether the Maywood-Cudahy

26  Police Department was a part of the Sheriff's Department or if it was its own entity."

27  (UMF 205.) She did not even tell her daughter during that phone conversation that

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    her son JASON SENA had just been shot. (UMF 207.)

2         Based on SHARON SENA's haste to make a complaint against the MPD rather

3    than try in earnest to help her son whom she believed was just shot, her claims against

4    Defendants are wholly without merit.

5        **4.  Defendant Officer SALGADO Had Official Discretion To Release**

6           **JASON SENA's Impounded Vehicle On April 5, 2006.**

7         On the day in question, Officer SALGADO was a supervisor of the Records

8    Officer and had specific duties relative to the functions of the Records Office. (UMF

9    221.) Per MPD policy, Officer SALGADO had discretion on whether or not to

10   release a vehicle from impound on April 5, 2006. (UMF 222.)  Depending on the

11   circumstances of the particular individual requesting the release, a vehicle cannot be

12   released. (UMF 223.) He was under no duty at the time to release the vehicle to

13   JASON SENA, especially given the fact that JASON SENA had caused a public

14   disturbance on two occasions at the Records Office.

15        Further, as exemplified in *Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d

16   858, the Ninth Circuit recognizes the "Community Caretaking Function."  In *Miranda*

17   *v. City of Cornelius*, the plaintiffs, as in the instant case, sued the city under 42 U.S.C.

18   § 1983, alleging that the impoundment of their vehicle violated their constitutional

19   rights under the Fourth and Fourteenth Amendments.  Under the "Community

20   Caretaking Function," law enforcement agents are allowed to impound a vehicle if

21   the driver's violation of a traffic regulation prevents the driver from lawfully

22   operating the vehicle, and also if it is necessary to remove the vehicle from a public

23   location.

24        Here, JASON SENA was stopped in a residential area, and was the only

25   occupant of his vehicle.  It was unreasonable for the Defendant Officers to allow the

26   vehicle to remain in the public location, as JASON SENA did not have a means of

27   driving it off to a secure location.  Further, JASON SENA parked the vehicle such

16

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1  that it was not pulled over completely to the curb, and as such, created a hazard to

2  vehicular traffic on W. Santa Ana Street, where he was stopped.  As law enforcement

3  agents can readily avail themselves of the "Community Caretaking Function,"

4  Plaintiffs' claim is wholly porous.

### C. DEFENDANT OFFICER TALMO HAS QUALIFIED IMMUNITY RELATIVE TO THE INCIDENT OF APRIL 7, 2006.

7       On April 7, 2007, Officer TALMO's superiors told him at a briefing or station

8  detail that through an error in the court system, the Los Angeles Sheriff's

9  Department, or detectives at the MPD, the probable cause determination on JASON

10  SENA regarding the felony charges of April 5, 2007 was expiring.  (UMF 239, 240,

11  242.)  Officer TALMO's superiors instructed Officer TALMO to go to the Los

12  Angeles County Jail on April 7, 2007, re-arrest JASON SENA, and re-book JASON

13  SENA at the MPD that day. (UMF 243, 244, 245.)  Officer TALMO followed his

14  superiors' orders.

15       Officer TALMO called L.A. County Sheriff's personnel in order to have

16  JASON SENA placed into Officer Talmo's custody. (UMF 246) The Sheriff's

17  personnel did not inform Officer TALMO that JASON SENA had already been

18  ordered released in court that day.  (UMF 247, 248, 255.)  When Officer TALMO

19  arrived at the Los Angeles County Jail, two Sheriff's deputies passed custody of

20  JASON SENA to Officer TALMO.  (UMF 232.) Neither of the deputies informed

21  Officer TALMO that JASON SENA was subject to a court-ordered release.  (UMF

22  247, 248, 255.)  Further compounding the mistake, **at no time ever** did JASON

23  SENA tell Officer TALMO or any other law enforcement officer that he had been

24  ordered released that day. (UMF 262.)  Thus, throughout the entire car ride to MPD

25  from Los Angeles County Jail, throughout the entire re-booking process at MPD, and

26  throughout the entire car ride from MPD back to Los Angeles County Jail, JASON

27  SENA did not tell anybody – including Officer TALMO – that he was ordered

17

1  released that day.  (UMF 262.)

2     **1. Defendant Officer TALMO Had Probable Cause To Detain**

3      **JASON SENA On April 7, 2006.**

4    On April 7, 2006, MPD Sergeant Anderson requested a probable cause

5  determination from the court for the arrest of JASON SENA. (UMF 259.)  On April

6  8, 2006, Judge Beverly Reid O'Connell determined that there was probable cause for

7  Officer TALMO's arrest of JASON SENA on April 7, 2006.  (UMF 261.)

8     **2. Defendant Officer TALMO's Arrest Of JASON SENA On April**

9      **7, 2006 Was The Result Of A Mistake Of Fact And Law.**

10   The defense of mistake of law or fact regarding a peace officer's reliance on an

11 invalid probable cause determination or warrant is well established.  In fact, the Ninth

12 Circuit has ceased to draw a distinction between mistake of law and mistake of fact.

13 (*Benson v. Hightower* (9th Cir. 1980) 633 F.2d 869.)

14   In *Benson v. Hightower*, a U.S. Magistrate issued a search warrant to U.S.

15 Customs agents for the search and seizure of South African Krugerrand gold pieces

16 that the agents believed were being smuggled into the United States. (*Id.*)  After

17 seizing the Krugerrand gold pieces, the agents arrested the plaintiffs therein and an

18 indictment was returned charging the plaintiffs with violation of U.S. Customs laws.

19 (*Id.*)  A trial judge subsequently dismissed the charges against the plaintiffs holding

20 that the Krugerrand gold pieces were currency, and thus, not declarable items. (*Id.* at

21 870.)  Plaintiffs then filed suit against the U.S. Customs agents for violation of their

22 constitutional rights. (*Id.*)  The district court granted defendants' motion for summary

23 judgment on the ground that defendants had established as a matter of law on

24 uncontroverted facts that qualified immunity defense.  Plaintiffs appealed.  The Ninth

25 Circuit, citing *Shelton v. U.S. Customs Service* (9th Cir. 1977) 565 F.2d 1140,

26 pronounced the following well established requirements: "There must have existed, at

27 the time and in light of all the circumstances, reasonable grounds that the action was

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1    appropriate and the officials must have acted in good faith." (*Benson, supra,* 633 F.2d

2    at 870.)

3        The *Benson* court found that the facts supported both requirements for the

4    qualified immunity defense, noting the "imprimatur of the neutral, independent

5    judicial officer in issuing the warrant." (*Id.*)  After analyzing the Restatement 2d of

6    Torts § 121, the court held: "We are not persuaded that the Restatement rule should

7    be applied to bar the availability of the qualified immunity defense as a matter of law.

8    Supreme Court dicta, analogous cases, and other authority support the rule that a

9    good faith mistake of law should be treated no differently than a mistake of fact." (*Id.*

10   at 807-871 citing *Butz v.Economou* (1978) 438 U.S. 478; *Midwest Growers Co-Op*

11   *Corp. v. Kirkemo* (9th Cir. 1976) 533 F.2d 455.)  The *Benson* court asserted that

12   public policy requires that a police officer who arrests someone in good faith and with

13   probable cause cannot be held liable for false arrest, even though the innocence of the

14   suspect is later proven. (*Benson, supra,* 633 F.2d at 871.)  The court also stated that

15   its holding in *Midwest Growers Co-Op Corp. v. Kirkemo* (9th Cir. 1976) 533 F.2d 455

16   would equally apply.

17       In *Midwest Growers Co-Op Corp. v. Kirkemo, supra,* the Ninth Circuit dealt

18   with whether individual agents of the Interstate Commerce Commission ("the

19   Commission") were entitled to qualified immunity where they seized items from an

20   agricultural cooperative relying on an administrative subpoena duces tecum issued by

21   their Commission superiors.  In finding that the individual agents were indeed entitled

22   to qualified immunity for relying on their superiors' orders, the *Midwest Growers*

23   court laid the ground rules for the well settled law in the Ninth Circuit:  "[D]efendants

24   … as agents of the Commission … participated in the investigation ***under direction***

25   ***from their superiors and under a good faith belief*** that they were operating under a

26   valid warrant issued by a United States Magistrate." (*Midwest Growers, supra,* 533

27   F.2d at 464.) (Emphasis added.)

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1      In the instant case, **Officer TALMO was directed by his superiors** to: go to the

2  Los Angeles County Jail (UMF 243); re-arrest JASON SENA (UMF 243); transport

3  JASON SENA back to the MPD (UMF 244); and re-book JASON SENA at the MPD

4  (UMF 245).  Prior to re-arresting JASON SENA, Officer TALMO was not informed

5  that JASON SENA had been released on his own recognizance (UMF 248).  **In good**

6  **faith reliance on the orders he received from his superiors, Officer TALMO**: re-

7  arrested JASON SENA (UMF 249); transported JASON SENA from Los Angeles

8  County Jail to the MPD (UMF 250); and re-booked JASON SENA at the MPD (UMF

9  251).  Based on his superiors' instructions, Officer TALMO believed that new

10  evidence had developed between April 5, 2006 and April 7, 2006, such that re-

11  arresting JASON SENA was not improper or unlawful. (UMF 256.)

12      The Ninth Circuit's reasoning in *Benson* and *Midwest Growers* clearly applies

13  to the facts at hand. Like the agents in *Benson* and *Midwest Growers*, Officer

14  TALMO had no knowledge or way of knowing that his superiors supplied him with

15  an incorrect basis to re-arrest JASON SENA.  Like the agents in *Benson* and *Midwest*

16  *Growers*, Officer TALMO followed his superiors' direction, relying on their superior

17  knowledge of the matter at hand.  Here, as in *Benson,* there was an "imprimatur of the

18  neutral, independent judicial officer" – namely, Judge O'Connell's determination that

19  probable cause existed for the arrest of JASON SENA on April 7, 2006.  Finally, like

20  the agents in *Benson* and *Midwest Growers*, Officer TALMO engaged in the re-arrest

21  with a good faith belief that he was acting in compliance with the law.

22      Given the well established reasoning in *Benson* and *Midwest Growers* as well

23  as the strong public policy that requires that a police officer who arrests someone in

24  good faith and with probable cause cannot be held liable for false arrest, even though

25  the innocence of the suspect is later proven (*Benson, supra,* 633 F.2d at 871),

26  Defendants submit that Officer TALMO is entitled to qualified immunity for his

27  mistake of law and fact.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1    Last, as Officer TALMO was following orders from law enforcement superiors

2  in good faith, there is no reasonable basis that Officer TALMO used excessive force

3  in re-arresting JASON SENA on April 7, 2006.

4  **V.    PLAINTIFFS' *MONELL* CLAIM FOR RELIEF AGAINST THE CITY**

5  **SHOULD BE DISMISSED.**

6    Local governments are "persons" subject to liability under 42 U.S.C. § 1983 in

7  very limited circumstances. (*Monell v. Dep't. of Soc. Serv.* (1978) 436 U.S. 658, 690,

8  98 S.Ct. 2018, 56 L.Ed.2d 611.)  Cities may only be held liable under § 1983 where a

9  government actor commits an unconstitutional act pursuant to a custom or policy, or

10  if a final policymaker committed the act. (*Gable v. City of Chicago* (7th Cir. 2002)

11  296 F.3d 531, 537.)  Where plaintiff seeks to impose liability based on a city's

12  alleged custom or policy, plaintiff must produce evidence that the custom or policy

13  was the "moving force behind the constitutional violation." (*City of Canton v. Harris*

14  (1989) 489 U.S. 378, 389, 109 S.Ct. 1197; 103 L.Ed.2d 412.)  A city is only liable

15  when the city itself causes the constitutional violation. (*Id.*)  "[P]laintiff must show

16  that the municipal action was taken with the requisite degree of culpability and must

17  demonstrate a direct causal link between the municipal action and the deprivation of

18  federal rights." (*Board of Comm'rs of Bryan County v. Brown* (1997) 520 U.S. 397,

19  404, 117 S.Ct. 1382, 137 L. Ed.2d 626.)  Plaintiff's burden in establishing causation

20  is a heavy one. (*City of Canton, supra,* 489 U.S. at 385.)

21    Cities may not be charged with liability for the unconstitutional discretionary

22  actions of city employees under § 1983. (*City of St. Louis v. Praprotnik* (1988) 485

23  U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107.)  Cities are not vicariously liable under §

24  1983 for the random acts or isolated unconstitutional acts by non-policymaking

25  employees. (*McDade v. WEST* (9th Cir. 2000) 223 F.3d 1135, 1142 ; *Trevino v. Gates*

26  (9th Cir. 1996) 99 F.3d 911, 918; *Thompson v. City of Los Angeles* 885 (9th Cir. 1997)

27  F.2d 1439, 1444.)  Cities are not liable where the alleged deprivation cannot be

1    attributed to conduct which was performed as official city policy. (*Blair v. City of*

2    *Pomona* (9th Cir. 2000) 223 F.3d 1074 .)

3        Where plaintiff seeks to impose *Monell* liability based on an informal custom

4    or practice, plaintiff must show that the informal conduct was so frequent or

5    pervasive that it must necessarily have come to the attention of the responsible

6    policymaker who then acted with deliberate indifference in failing to correct the

7    conduct. (*City of Canton, supra,* 489 U.S. at 378.)  Deliberate indifference is a

8    conscious choice to follow a course of action among various alternatives. (*Id.* at

9    384.)  The conduct must be so permanent and settled that it amounts to a custom or

10   usage with the force of law. (*City of St. Louis, supra,* 485 U.S. at 112.)

11       Case law is replete with situations wherein the circuit courts have ruled that

12   plaintiffs failed to demonstrate that a custom was so widespread or pervasive so as to

13   subject the local governmental entity to liability under § 1983.  In *Carter v. District of*

14   *Columbia*, the court held that seven deaths and other scattered incidents of police

15   misconduct did not coalesce into a policy. (*Carter v. District of Columbia* (D.C. Cir.

16   1986) 795 F. 2d 116, 123-124.)  The court noted that if that were the case, "then

17   practically every large metropolitan police force…could be targeted for liability."

18   (*Id.* at 123.)  In *Hamilton v. Rodgers*, the court held that evidence of a dozen incidents

19   of racist bigotry and supervisory knowledge of these incidents over a two and one-

20   half year period was insufficient to establish a policy of bigotry. (*Hamilton v.*

21   *Rodgers* (5th Cir. 1986) 791 F.2d 439, 443-444.)  The court found it significant that

22   there was no officially promulgated policy encouraging racial discrimination and

23   there was in fact a departmental rule explicitly prohibiting racial slurs or jokes. (*Id.*)

24       To establish *Monell* liability in this matter, the evidence must demonstrate that

25   the employees were "highly likely" to inflict the particular injury suffered by the

26   Plaintiffs; a finding of culpability cannot rest on a mere probability that an officer

27   inadequately trained will inflict any constitutional injury. (*Board of County Comm'rs*

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1   *v. Brown* (1997) 520 U.S. 397, 405-408, 412, 117 S.Ct. 1382, 137 L.Ed.2d 626

2   [county was not liable for excessive force committed by deputy, even though sheriff

3   hired deputy despite lengthy criminal record, including assault and battery, resisting

4   arrest and public drunkenness]; see also *Aguillard v. McGowan* (5th Cir. 2000) 207

5   F.3d 226 [county was not liable for shooting death committed by deputy during

6   execution of arrest warrant even though deputy had a prior law enforcement record

7   where there was no evidence that the deputy had ever wrongfully shot someone or

8   was trigger happy].)

9   In the present matter, Plaintiffs allege that the MPD knew or should have

10  known that the Defendant Officers had a history, propensity, and patern of using

11  excessive force, falsifying records, and using unreasonable police tactics, among

12  other things.  (Complaint, paras. 40-46.)  Plaintiffs allege these policies and customs

13  perpetuated a code of silence and were a moving force in the violations of Plaintiffs'

14  constitutional rights.  (*Id.* at para. 44.)

15  **A.    PLAINTIFFS CANNOT PROVE AN UNDERLYING**

16  **CONSTITUTIONAL VIOLATION.**

17  A city cannot be held liable under § 1983 in the absence of an underlying

18  constitutional violation.  (*City of Los Angeles v. Heller* (1986) 475 U.S. 796, 106

19  S.Ct. 1571, 89 L.Ed.2d 806 [if officer acted constitutionally, city cannot be held

20  liable]; see also *Quintanilla v. City of Downey* (9th Cir. 1996) 84 F.3d 353, 354-356 .)

21  Plaintiffs have not and cannot provide evidence that any of the Defendant

22  Officers violated their constitutional rights.  As shown in the Defendants' Separate

23  Sttement of Uncontroverted Maerial Facts and Supporting Evidence, in each instance,

24  the Defendant Officers made arrests with probable cause and used reasonable force.

25  Plaintiffs cannot point to any evidence that shows that the policymakers of the City of

26  Maywood acted with such deliberate indifference such as to promote and maintain a

27  band of "renegade cowboys."

23

**B.**    **PLAINTIFFS HAVE NOT APPROPRIATELY IDENTIFIED THE CUSTOMS OR POLICIES THAT CAUSED THEIR CONSTITUTIONAL DEPRIVATION.**

Plaintiffs must identify the custom or policy that he claims is the cause of the constitutional deprivation. (*Board of County Comm'rs, supra,* 520 U.S. at 403.)  In *Wayne v. Jarvis*, the 11th Circuit held that plaintiff failed to appropriately identify inmates who were allegedly housed with inmates with AIDS and therefore he failed to show that the county had a custom or policy in this regard. (*Wayne v. Jarvis* (11th Cir. 1999) 197 3d 1098, 1105.)

Plaintiffs have failed to present any evidence of City policies, practices, procedures or any informal customs which caused Plaintiffs to be deprived of their civil rights.   Plaintiffs have not presented any evidence as to how often the alleged policies of a "code of silence" occurred such as to indicate a trend or true pattern. Finally, Plaintiffs have failed to present any evidence that the Defendant Officers were "highly likely" to inflict the particular injury allegedly inflicted.

Similarly, Plaintiffs have failed to present any evidence regarding their inappropriate promotion claim.  Plaintiffs have not presented any evidence regarding which City employees and/or policymakers inappropriately promoted which employees.  Plaintiffs have failed to present evidence as to when any of this inappropriate promotion occurred.  Plaintiffs have not presented any evidence as to how often this occurred.

**C.**    **PLAINTIFFS HAVE NOT PRESENTED EVIDENCE REGARDING ANY UNCONSTITUTIONAL ACTS BY FINAL POLICYMAKERS.**

Plaintiffs have alleged that defendant Chief of Police Leflar is a final policymaker, but he has not presented any proof of this allegation.  Even assuming that Chief Leflar is a final policymaker, Plaintiff has not presented any proof that Chief Leflar committed any or participated in any unconstitutional act.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**D.     PLAINTIFFS HAVE NOT ESTABLISHED A CAUSAL LINK BETWEEN ANY MUNICIPAL POLICY, CUSTOM OR SUPERVISORY ACT AND THEIR ALLEGED INJURY.**

Plaintiffs must show a close causal relation between the policy, custom or supervisory act and the injury suffered. (*Johnson v. Hardin County* (6th Cir. 1990) 908 F.2d 1280, 1285; see also *Colburn v. Upper Darby Township* (3d Cir. 1991) 946 F.2d 1017, 1028 [identified deficiency in training program must be closely related to the ultimate constitutional injury].)

Plaintiffs have failed to present any evidence regarding causation in support of their *Monell* claim. Rather, Plaintiffs have set forth unsupported allegations regarding scattered incidents. These "scattered incidents" "do not coalesce into policy." Plaintiffs have not presented evidence of the allegedly improper customs/polices and has failed to supply any evidence of a causal connection between the improper customs/policies and their constitutional injuries. Plaintiffs have not presented evidence demonstrating that the City's policies or customs were the "moving force" behind their injury and thus their *Monell* claim should be dismissed.

**VI.   PLAINTIFF JASON SENA'S DAMAGES, IF ANY, MUST BE LIMITED BECAUSE HE IS NOT SUFFERING FROM ANY INJURIES AS A RESULT OF THE ALLEGATIONS IN THE INSTANT COMPLAINT.**

Since April 27, 2006, JASON SENA has not sought any medical attention for injuries he allegedly sustained as a result of the allegations contained in the complaint in *Sena, et al. v. City of Maywood, et al.*, Case No. CV 07-1724 AHM (JCx). (UMF 269.) On March 11, 2008, JASON SENA was asked, under oath, why he had not received any medical treatment from April 27, 2006 to the date of his deposition on March 11, 2008. (UMF 270.) JASON SENA testified under oath on March 11, 2008, that he has not received medical treatment from April 27, 2006 to the date of his deposition on March 11, 2008 because: "[T]here is -- I'm not -- I mean, I'm not

1    suffering, you know, from any injuries." (UFM 271.)

2        As JASON SENA is not suffering from any injuries, his damages, if any,

3    should be limited to only his past injuries, assuming he can present evidence of such,

4    which he has failed to do.

5    **VII.**    **PLAINTIFF SHARON SENA'S DAMAGES, IF ANY, MUST BE**

6        **LIMITED BECAUSE SHE HAS FAILED TO MITIGATE ANY**

7        **DAMAGE WHICH SHE ALLEGEDLY SUFFERED AS A RESULT OF**

8        **THE ALLEGATIONS IN THE INSTANT COMPLAINT.**

9        SHARON SENA did not seek medical treatment for her injuries allegedly

10    sustained as a result of Officer Talmo's actions on April 5, 2006 until approximately

11    6 months after April 5, 2006. SHARON SENA has not sought any sort of

12    professional medical or psychological treatment for her claim of emotional distress.

13    SHARON SENA does not know if she suffers from post traumatic stress disorder as a

14    result of the incident of April 5, 2006. SHARON SENA has not seen any health care

15    provider for her alleged fear of police officer as a result of the incident of April 5,

16    2006. SHARON SENA has not seen any health care provider for her alleged sleep

17    disorders as a result of the incident of April 5, 2006. SHARON SENA does not suffer

18    from nightmares as a result of the incident of April 5, 2006. (UMF 272-277.)

19        As SHARON SENA has not ascertained to date her physical and mental

20    damages, if any, this court should limit her claim to compensatory damages for such

21    uncertain injuries.  Further, Defendants respectfully request that this court consider

22    that SHARON SENA has wholly failed to mitigate any alleged injury, and as such,

23    she should be barred from, benefiting from her failure to seek appropriate medical

24    attention, if such attention is actually needed.

25    ///

26    ///

27    ///

## VIII. <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that this Court grant this Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.

Respectfully Submitted,

Dated: March 31, 2008          BOHM, MATSEN, KEGEL & AGUILERA, LLP

By: _____
Matthew J. Salcedo,
Attorneys for Defendants CITY OF
MAYWOOD, a municipal corporation and
public entity, BRUCE LEFLAR, JERRY
SALGADO, JOHN BOSTON, RYAN WEST,
BRENT TALMO, MEDA and GARCIA

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the City of Costa Mesa, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 695 Town Center Drive, Suite 700, Costa Mesa, CA 92626. On March 31, 2008 I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED:    **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF MATTHEW J. SALCEDO**

SERVED UPON:    **SEE ATTACHED SERVICE LIST**

☐  (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Costa Mesa, California. I am readily familiar with the practice of Bohm, Matsen, Kegel & Aguilera, LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐  (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by U.S. Delivery Systems to receive documents to be delivered on the same date. A proof of service signed by the authorized courier will be filed forthwith.

☐  (BY FEDERAL EXPRESS) I am readily familiar with the practice of the Bohm, Matsen, Kegel & Aguilera, LLP for the collection and processing of correspondence for overnight delivery and known that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

☐  (BY FACSIMILE WHERE INDICATED) The above-referenced document was transmitted by facsimile transmission and the transmission was reported as complete and without error. Pursuant to C.R.C. 2009(I), I caused the transmitting facsimile machine to issue properly a transmission report, a copy of which is attached to this Declaration.

☒  (BY ELECTRONIC FILING WITH THE U.S. DISTRICT COURT) By submitting said documents for Electronic Case Filing on said date pursuant to Local Rule 5-4 and General Order45, at Bohm, Matsen, Kegel & Aguilera, LLP, 695 Town Center Drive, Suite 700, Costa Mesa, CA 92626.

☐  (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒  (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on March 31, 2008, at Costa Mesa, California.

_____
KYM SMITH

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Service List</u>
*Sena v. City of Maywood*
*United States District Court, Central (Los Angeles),*
*Case Number CV07-1724 AHM (JCx)*

Antonio Rodriguez
LAW OFFICES OF ANTONIO RODRIGUEZ
5429 E. Beverly Boulevard
Los Angeles, CA 90022
(323) 869-9909 TEL
(323) 869-9911 FAX

**Counsel for Plaintiffs,**
JASON WADE SENA and SHARON SENA

Jorge Gonzalez
A PROFESSIONAL CORPORATION
2485 Huntington Drive, Ste. 238
San Marino, CA 91108
 (626) 683-3922 TEL
(626) 683-3944 FAX

**Counsel for Plaintiffs,**
JASON WADE SENA and SHARON SENA

PROOF OF SERVICE